IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| TEENA M. JEFFERS, | Civ. No. 08-6155-AA |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br>Administration, | |
| Defendant. | |

John C. DeWenter
870 West Centennial Blvd.
Springfield, Oregon 97477-2835
    Attorney for plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Britannia I. Hobbs
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

1    - OPINION AND ORDER

Stephanie R. Martz
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075
    Attorneys for defendant

AIKEN, Chief Judge:

Plaintiff brings this action pursuant to the Social Security Act (the Act), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).  For the reasons set forth below, the Commissioner's decision is affirmed.

## BACKGROUND

On October 7, 2002, plaintiff protectively filed applications for both DIB and SSI.  Tr. 81-83, 403-05.  The applications were denied initially and upon reconsideration.  Tr. 65-69, 72-74, 407-11, 413-15.  Plaintiff timely requested a hearing before an administrative law judge (ALJ).  Tr. 75-78.  The ALJ conducted hearings beginning on February 10, 2005, continued on July 7, 2005, and continued again on March 16, 2006.  Tr. 511-41, 542-55, 556-83.  On May 12, 2006, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act.  Tr. 416-30.  The Appeals Council remanded the case back to the ALJ for further review.  Tr. 431-35.  The ALJ conducted a final hearing on August 15, 2007.  Tr. 584-603.  On November 15, 2007, the ALJ again issued a decision finding plaintiff not disabled within the meaning of the Act.  Tr.

20-35. On March 28, 2008, the Appeals Council denied plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner. Tr. 10-12. Plaintiff now seeks judicial review.

Born on November 24, 1962, plaintiff was forty-four years old at the time of the ALJ's second decision, with a GED and past relevant work as a postal clerk, mail carrier, and survey worker. Tr. 81, 136-43. Plaintiff alleges disability since January 10, 2001, due to back injuries and pain, a bladder control issue, and depression. Tr. 23, 81-83, 403-04.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability. <u>Howard v. Heckler</u>, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The ALJ evaluated plaintiff's allegation of disability pursuant to the relevant five-step sequential process. See <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that plaintiff met the DIB insured requirements through September 30, 2008, and that plaintiff has not engaged in substantial gainful activity since her alleged onset of disability. Tr. 23; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At steps two and three, the ALJ found that plaintiff has severe impairments of degenerative disc disease of the lumbosacral spine, status-post fusion procedure, a bladder control issue, and depression, but that plaintiff's impairments do not meet or equal "one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 23; 20 C.F.R. §§ 404.1520(c)-(d), 404.1525, 404.1526, 416.920(c)-(d), 416.925, 416.926; 20 C.F.R. Pt. 404, Subpt. P, App. 1.

For step four, the ALJ must assess the claimant's residual

functional capacity (RFC) and determine whether the claimant can perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). Here, the ALJ found that plaintiff retains the RFC to perform a reduced range of sedentary, unskilled work. Tr. 24, 32. Specifically, the ALJ found that plaintiff can lift up to 10 pounds, stand or walk for two hours, and sit for six hours in an eight-hour work day, with an option to sit or stand as needed. Based on this RFC assessment, the ALJ found that plaintiff could not perform her past relevant work. Tr. 33.

At step five, the Commissioner bears the burden to establish that the claimant is capable of performing other work that exists in significant numbers in the national and local economies. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(g), 416.920(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.966. Considering plaintiff's age, education, work experience, and RFC, the ALJ found that a significant number of jobs exist in the national economy that plaintiff can perform, including telephone quotation clerk, final assembler, and document sorter. Tr. 34. Therefore, the ALJ found that plaintiff is not disabled within the meaning of the Act. Tr. 34-35.

## DISCUSSION

Plaintiff argues that the ALJ's determination that she is not disabled within the meaning of the Act is not supported by

5    - OPINION AND ORDER

substantial evidence. Specifically, plaintiff contends that the ALJ improperly assessed or regarded the opinions of medical providers and a vocational expert, as well as plaintiff's credibility.

A.  Credibility Determination

Plaintiff contends that the ALJ improperly discredited her testimony and subjective complaints of pain. Specifically, plaintiff alleges that the ALJ's final determination "fails to distinguish between innocent mistakes or unintentional overstatements by [p]laintiff and intentional deception . . . [and] it fails to distinguish between mistakes and overstatements that are material and those that are not." Pl.'s Mem. in Supp. of Pet. 18.[1]

Plaintiff reported that she has severe physical limitations due to pain and injuries of her back and spine, a bladder issue, and depression. Tr. 92, 524-30, 538-40. The ALJ found that plaintiff's statements concerning the intensity, duration and limiting effects of her symptoms are not credible. Tr. 29. The ALJ stated that plaintiff's "allegations of persisting crippling musculoskeletal pain are not only at odds with the objective medical records, and the opinions of her treating providers, but

---

[1]Plaintiff does not cite any specific examples in the record or elaborate on any circumstances for which plaintiff believes the ALJ should have made such a distinction. Furthermore, plaintiff fails to cite legal precedence that would indicate such an analysis is legally required by the ALJ.

6    -  OPINION AND ORDER

are brought into question by direct challenges to her credibility." Tr. 31.

When a plaintiff produces objective medical evidence of an impairment that reasonably could be expected to produce some degree of the symptoms complained of, the ALJ may not reject the plaintiff's testimony regarding the severity of those symptoms unless "he makes specific findings stating clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). In making such findings, the ALJ must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may consider objective medical evidence and the claimant's treatment history, the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations, as well as any unexplained failure to seek treatment or follow a prescribed course of treatment. Smolen, 80 F.3d at 1284. Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements by the claimant. Id.

The ALJ highlighted several instances where evidence in the record controverts plaintiff's allegations. For example, Dr. Kasia Van Pett, M.D., a neurosurgeon who operated on plaintiff's back, noted in a report that plaintiff was "somewhat impatient and

7   - OPINION AND ORDER

hostile today mostly because both Dr. Hill and myself have stressed to her that she should be able to lift her foot up in any position." Tr. 25, 178. Dr. Van Pett went on to explain that it "does not make any anatomical sense that [plaintiff] is able to lift up her foot only with her body in a very contorted position." Tr. 178. Dr. Timothy Hill, M.D., a physiatrist and one of plaintiff's treating physicians, separately mentioned the presence of non-anatomic findings in several of his reports. Tr. 25, 258-66.

In an RFC questionnaire prepared by plaintiff's attorney, Dr. Erik Stowell, M.D., a physiatrist and one of plaintiff's treating physicians, answered in the negative regarding whether he thought plaintiff was a malingerer, although he specially noted that there were "non-organic findings." Tr. 500. Dr. Stowell also noted in a report that "[t]here is inconsistent weakness of right plantar flexion." Dr. Stowell went on to say that "[d]uring EMG testing, [plaintiff] was not able to plantar flex her foot to cause motor unit recruitment and then with change in position of the right leg, there was a sudden burst of motor units as her gastroc was activated." Tr. 29, 507.

On September 6, 2001, plaintiff met with Dr. Roger McKimmy, M.D., a urologist, upon referral to analyze a bladder issue that began sometime after plaintiff had been injured at work on January 10, 2001. Tr. 304. Dr. McKimmy performed a urodynamic evaluation

8   - OPINION AND ORDER

for plaintiff on October 22, 2001.  Tr. 298-301.  Other than treatment notes from plaintiff's 2001 visits, results from the urodynamic evaluation, and a letter that Dr. McKimmy sent to plaintiff on November 9, 2001, the ALJ noted no other evidence indicated that plaintiff received further medical consultation from Dr. McKimmy.  Tr. 30, 302.  Furthermore, the ALJ found no evidence to suggest that plaintiff actually sought further urological treatment for her bladder issue.[2]  Tr. 29-30; See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (holding that an ALJ may use evidence of "an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" in a credibility determination).

The ALJ also cited numerous examples of plaintiff's inconsistent statements to Dr. Allison Prescott, Ph.D., an examining psychologist.  Tr. 31.  First, plaintiff told Dr. Prescott that she had undergone extensive tests and treatment to evaluate and remedy her bladder control issue.  Tr. 31.  However, as previously stated, the record shows that plaintiff had only two visits with Dr. McKimmy.  Tr. 31, 298-304, 378.  Second, contrary to what plaintiff told Dr. Prescott, plaintiff's surgery in August of 2003 was not abdominal surgery "to help [plaintiff's] muscles

---

[2] In March 2006, Dr. Stowell indicated in his notes that he believed plaintiff was receiving the care of Dr. McKimmy for her bladder issue, evidence of which is lacking in the record.  Tr. 492.

regain control that was lost," but for the removal of uterine fibroids. Tr. 31, 307-08, 378-79. Third, the ALJ pointed out that plaintiff told Dr. Prescott that she has a very strong work ethic, and that she had been working since the age of 16. Tr. 31, 379. However, upon review of plaintiff's earnings record, the ALJ noted that she had only "intermittent and scanty" earnings from her past jobs, and that her level of earnings after the onset of the alleged disability were little different from before her alleged onset date. Tr. 31, 84-90. Fourth, Dr. Prescott reported that plaintiff explained that "she has not been medically released to work because of her urinary control problem." Tr. 378. However, plaintiff had been released to work by Dr. Kitchel, M.D., an orthopedic surgeon who examined plaintiff, as well as Dr. Hill. Tr. 31, 250, 275. Furthermore, Dr. McKimmy, the only doctor who examined plaintiff concerning her urinary control problem, noted in a RFC questionnaire that the work-limitation questions were "outside the purvue [*sic*] of urology" and left a majority of them blank. Tr. 328-31. Finally, plaintiff told Dr. Prescott that she could not seek vocational rehabilitation unless she received a release to work, which is not substantiated by the record. Tr. 31, 378.

The ALJ's reasons for discrediting plaintiff's complaints are clear, convincing, and supported by the record. Thus, I find that the ALJ did not arbitrarily discredit plaintiff's testimony.

B. Physician Evidence

10    - OPINION AND ORDER

Plaintiff contends that the ALJ improperly evaluated all or part of the evidence regarding plaintiff's limitations. Specifically, plaintiff argues that the ALJ erred in rejecting in whole or in part the opinions of Dr. McKimmy, a treating physician, Dr. Prescott, an examining psychologist, and Dr. Peter LeBray, Ph.D., a non-examining psychologist.

The Ninth Circuit distinguishes among the opinions of three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The opinions of treating physicians are entitled to greater deference than those of examining physicians, and in turn, the opinions of examining physicians are entitled to greater weight than those of non-examining physicians. Id. at 830-31 & n.8. The terms "physician" includes psychologists and other health professionals. Id. at n.7.

If a treating or examining physician's opinion is uncontradicted, the ALJ must provide "clear and convincing" reasons to reject the physician's opinion supported by substantial evidence in the record. Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001). If contradicted, the ALJ must provide "specific and legitimate" reasons for rejecting a treating or examining physician's opinion. Id.; Lester, 81 F.3d at 830-31.

11   - OPINION AND ORDER

    1.  Dr. McKimmy's RFC

On February 7, 2005, Dr. McKimmy completed an RFC questionnaire prepared by plaintiff's attorney. Tr. 328-31. Dr. McKimmy indicated that plaintiff's prognosis concerning the bladder issue was "fair." Tr. 328. Dr. McKimmy also opined that in order to work, plaintiff would need to be able to urinate every two hours, that she would be incontinent daily without the ability to have timed voids, that she would need access to a restroom with the ability to take unscheduled breaks, and that she would be absent from work two days per month because of the bladder issue. Tr. 328-31.

In limiting the weight accorded to the questionnaire, the ALJ indicated that Dr. McKimmy completed the questionnaire nearly three-and-a-half years after he had last communicated with plaintiff, with no evidence that Dr. McKimmy had been updated on plaintiff's medical history prior to his completion of the questionnaire.³ Tr. 30, 328-31; See Fair, 885 F.2d at 603 (holding that an ALJ may use evidence of "an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" in determining the credibility of claimant's debilitating symptoms).

The ALJ found that plaintiff's bladder issue is manageable

---

³The questionnaire also shows that Dr. McKimmy filled it out with the caveat that he was answering some of the questions "as of 2001," further strengthening the ALJ's interpretation.

12   - OPINION AND ORDER

with timed voids, and that incontinence would not be an issue under such management. Tr. 32. In so finding, the ALJ relied on a report from Dr. Hill stating that plaintiff "is able to remain continent with a timed voiding program." Tr. 258. The ALJ also relied on a letter from Dr. McKimmy to plaintiff stating that plaintiff's "situation is safe and there are no immediate pitfalls that I can predict that would indicate a change in your bladder management." Tr. 302. Finally, Dr. McKimmy's responses to the RFC questionnaire further state that plaintiff would avoid incontinence with timed voids. Tr. 329.

In sum, I find that the ALJ provided specific and sufficient reasons for his interpretation of Dr. McKimmy's RFC questionnaire.

### 2. Dr. Prescott

On March 14, 2005, plaintiff met with Dr. Prescott for a mental health evaluation that had been ordered by the ALJ. Tr. 378-81. Questions of plaintiff's mental health surfaced at the end of the first hearing conducted by the ALJ, who ordered the evaluation in an effort to properly develop the record since it contains scant evidence of plaintiff's mental health. Tr. 539-40. In the evaluation, Dr. Prescott diagnosed plaintiff with Major Depressive Disorder, recurrent. Tr. 381. On July 30, 2005, and March 6, 2006, Dr. Prescott completed two nearly-identical "Mental Impairment Questionnaires," both of which were prepared by plaintiff's attorney. Tr. 392-95, 398-401.

13   - OPINION AND ORDER

The ALJ decided to give little weight to Dr. Prescott's opinions concerning plaintiff's mental state, because the evidence Dr. Prescott used to base her opinions on primarily came from plaintiff's subjective self-reports, much of which was disregarded by the ALJ as inconsistent with the evidence in the record. Tr. 32-33. A "physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (quoting Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989)).

Thus, given the ALJ's credibility finding, I find that the ALJ provided legally sufficient reasons to disregard the opinion of Dr. Prescott.

### 3. Dr. LeBray

Dr. LeBray used the Psychiatric Review Technique (PRT) to determine whether plaintiff suffers from a psychiatric disorder. Tr. 359-72; 20 C.F.R. §§ 404.1520a, 416.920a; 20 C.F.R. Pt. 404, Subpt. P, App. 1. In order to diagnose depression under the PRT, it must be shown that the claimant suffers from at least four of nine different mental disturbances, and that the disturbances cause at least two of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration,

persistence, or pace, or repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Dr. LeBray opined that plaintiff suffers from five of the nine possible depressive syndrom mental disturbances. Tr. 362. Dr. LeBray then opined that plaintiff does not suffer from episodes of decompensation, but that she does suffer a mild degree of limitation in activities of daily living, a moderate degree of limitation in maintaining social functioning, and a moderate degree of limitation in maintaining concentration, persistence, or pace, due to her depressive symptoms. Tr. 362. From his findings, Dr. LeBray concluded that plaintiff's depressive symptoms do not limit plaintiff's function by a degree that satisfies the functional criterion of the PRT. Tr. 369; 20 C.F.R. Pt. 404, Subpt. P, App. 1.

The ALJ accepted the majority of Dr. LeBray's opinions, but rejected Dr. LeBray's conclusion that plaintiff was limited in her ability to work with the general public. Tr. 28. Thus, the ALJ found that plaintiff has some degree of depression, but she has had no symptoms beyond those that would limit her in performing only unskilled work. Tr. 32. In reaching this conclusion, the ALJ provided no reason to reject Dr. LeBray's conclusion that plaintiff should avoid working with the general public. However, plaintiff makes no argument that the jobs identified at step five require interaction with the general public.

15 - OPINION AND ORDER

Therefore, I find no appreciable error in the ALJ's assessment of Dr. LeBray's opinion.

## C.  Vocational Hypothetical

   Dr. Stowell opined in a RFC questionnaire that plaintiff can sit for about four hours and stand/walk for about four hours in an eight-hour work day.  Tr. 501.  Dr. Hill also stated that plaintiff's ability to sit was limited to four hours.  Tr. 250. Despite these uncontradicted opinions, the ALJ found that the plaintiff has the ability to sit for six hours in the same period. Tr. 24.  However, the ALJ presented a hypothetical question that included the four-hour limitation to the vocational expert (VE). Tr. 571.  Of the three jobs that the ALJ ultimately found that plaintiff can perform, the VE opined that plaintiff may not be able to perform the telephone quotation clerk job given the four-hour sitting limitation, leaving the final assembler and document sorter jobs available.  Tr. 571.

    As stated by the VE, there are 62,025 final assembler jobs in the national economy, and 756 in the state of Oregon.  Tr. 570. Also, there are 65,667 jobs as a document sorter in the national economy, with 712 positions in the state of Oregon.  Tr. 570.  If the ALJ had limited his finding of jobs that plaintiff can perform to only the final assembler and document sorter positions, the aggregate number of jobs available as quoted by the VE, 127,692 jobs nationally and 1,458 jobs in Oregon, is considered a

16   - OPINION AND ORDER

significant number of jobs in the local and national economies. Baker v. Sec'y of Health and Human Servs., 882 F.2d 1474, 1478-79 (9th Cir. 1989) (finding that 1,266 jobs in the local economy is considered significant).

Thus, since the ALJ's RFC finding is not prejudicial and does not ultimately change the ALJ's disability conclusion, it falls "under the rubric of harmless error." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006).

### D. Areta Sturges

Plaintiff argues that the ALJ improperly devaluated the professional testimony of Areta Sturges, a vocational expert. Plaintiff sought Ms. Sturges's vocational expertise regarding plaintiff's SSI and DIB applications on July 11, 2006, outside of any hearing conducted by the ALJ. Tr. 472. Plaintiff supplied Ms. Sturges with only five exhibits on the record, none of which consisted of the opinions of plaintiff's primary care physician. Tr. 472. In fact, three of the exhibits that Ms. Sturges relied on in forming her opinions were properly disregarded by the ALJ. Tr. 30, 32-33.

Given the ALJ's credibility analysis, and the fact that an impartial VE provided sufficient vocational expertise, I find that the ALJ did not err in disregarding Ms. Sturges's opinions.

## CONCLUSION

The ALJ's finding that plaintiff is not disabled within the

17   - OPINION AND ORDER

meaning of the Act is supported by substantial evidence in the record. Accordingly, the decision of the Commissioner is AFFIRMED. IT IS SO ORDERED.

Dated this  19  day of June, 2009.


            /s/ Ann Aiken            
              Ann Aiken
     United States Chief District Judge

18   - OPINION AND ORDER